# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-2007
Filed March 11, 2026

———————————

**In the Interest of J.M., Minor Child,**

**T.M., Father,**
Appellant.

———————————

Appeal from the Iowa District Court for Woodbury County,
The Honorable Stephanie Forker Parry, Judge.

———————————

**AFFIRMED**

———————————

John S. Moeller of John S. Moeller, P.C., Sioux City, attorney for appellant
father.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney
General, attorneys for appellee State.

Joseph W. Kertels of Juvenile Law Center, Sioux City, attorney and
guardian ad litem for minor child.

———————————

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Langholz, J.

1

**LANGHOLZ, Judge.**

A father appeals the juvenile court's order terminating his parental rights to his then-five-year-old daughter.[1] First, he challenges one of the two grounds for termination found by juvenile court. And second, he argues that termination is not in the daughter's best interest because at the time of termination, there was "no identifiable person to adopt [the daughter]," so the father "should be given additional time to work on reunification."

On our de novo review, we agree with the juvenile court. The father challenges only one statutory ground for termination, so he has waived any challenge to the other ground. And we agree that termination is in the daughter's best interest even though the Iowa Department of Health and Human Services ("HHS") had not yet identified an adoptive home for her at the time of termination. After ten foster-care placements in her short life and no likelihood of successful reunification with the father, she deserves permanency now rather than remaining in limbo. We thus affirm the juvenile court's termination order.

## I.    Statutory Grounds for Termination

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show termination is in the best interest of the child. *Id.* And third, the parent bears the burden to show whether a discretionary exception applies that should preclude termination. *Id.* We need not address any steps not

---

[1] The juvenile court also terminated the mother's parental rights. She does not appeal. We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's orders—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

challenged by a parent. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We review a termination decision de novo, giving "respectful consideration" to the juvenile court's factual findings, especially when based on credibility determinations. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The juvenile court terminated the father's parental rights under paragraphs "b" and "f" of Iowa Code section 232.116(1). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). The father challenges only one of the grounds for termination. Because he does not challenge that termination was proper under Iowa Code section 232.116(1)(f), he has waived any challenge to that statutory ground and we can affirm based on that ground without discussing it further. *See In re G.N.*, No. 20-1128, 2020 WL 7022388, at *1 (Iowa Ct. App. Nov. 30, 2020) (affirming based on unchallenged statutory grounds and collecting cases doing the same); *see also P.L.*, 778 N.W.2d at 40 (reasoning that the appellate court did not have to analyze an unchallenged statutory ground); *In re Est. of White*, No. 23-1009, 2024 WL 3887438, at *3 (Iowa Ct. App. Aug. 21, 2024) ("The appellate court will not reverse a ruling of the trial court that rests on independent alternative grounds where the appellant challenges only one of those grounds." (quoting 5 C.J.S. *Appeal & Error* § 839 (May 2024 update))).

## II.    The Daughter's Best Interest

The father next challenges the juvenile court's finding that termination is in the daughter's best interest. He makes only one argument: that he "should be given additional time to work on reunification" because the daughter's current foster family will not be adopting her and, as of the termination hearing, HHS had not identified another adoptive home.

The best interest of the child is the "paramount concern in a termination proceeding." *L.B.*, 970 N.W.2d at 313. We consider both the child's long-range and immediate best interest. *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). So "we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (cleaned up).

Applying this best-interest standard, our court has repeatedly rejected the argument that the lack of an adoptive home should preclude termination. *See, e.g.*, *In re T.C.*, 522 N.W.2d 106, 109 (Iowa Ct. App. 1994) ("We will not refuse to terminate the rights of parents who would otherwise be terminated because an adoptive home has not been secured."); *In re N.F.*, 579 N.W.2d 338, 342 (Iowa Ct. App. 1998); *In re T.M.*, No. 25-0252, 2025 WL 1706566, at *2 (Iowa Ct. App. June 18, 2025); *In re D.M.*, No. 25-1473, 2025 WL 3654241, at *3–4 (Iowa Ct. App. Dec. 17, 2025). We do so again here.

The father struggles with unaddressed substance-use and mental-health concerns—indeed he has been under the influence during a court hearing and a video call with his daughter. He is unemployed and homeless. At the time of the termination hearing, he had not taken advantage of the offered weekly in-person interactions with his daughter for over seven months and he was inconsistent with calling her. And the daughter "has appeared uncomfortable" when they do interact and tried to "hang up and

not talk to him." The father has also failed to participate in reunification services or otherwise demonstrate that his daughter "is a priority in his life."

Meanwhile, the daughter has struggled awaiting permanency. At the time of the termination hearing, she was in her tenth foster-care placement. She had been at that placement for about seven months and was doing somewhat better as her foster family and therapist were working with her to address behavioral issues and engage her in as many activities as possible. While the foster family was not an adoptive home, they were willing to keep the daughter in their home until an adoptive home was found. And HHS was engaged in identifying such a home.

We see no prospect in the foreseeable future that the father could take on his parental responsibilities and become a safe and nurturing placement for the daughter. And while HHS "had not yet located a permanent home for the child, [she] deserves the opportunity to find one without further delay." *D.M.*, 2025 WL 3654241, at *4. So we agree with the juvenile court that termination of the father's parental rights is in the daughter's best interest.

**AFFIRMED.**